Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in The U.S. DISTRICT COURT at Seattle, Washington.

AUGUST 16, 2006
BRUCE RIFKIN, Clerk
By _____ Deputy

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVID ALAN HAWKINS, and
HARRY SKEINS, JR.,

    Defendants.

CR06 0280 TSZ

INDICTMENT

06-CR-00280-INDI

The Grand Jury charges that:

## COUNT ONE

(Conspiracy to Commit Wire Fraud)

**A.  INTRODUCTION AND BACKGROUND.**

At all times relevant:

1.  Defendant DAVID ALAN HAWKINS owned and controlled corporations called "Mad Dog Builders, Inc." (hereafter "Mad Dog"), "Pacific Beach Mortgage Co., Inc." (hereafter, PBM), and "The Commercial Title Insurance and Escrow Co., Inc." (hereafter, Commercial Title).

2.  Defendant HARRY SKEINS, JR., is a lawyer admitted to practice in Texas, who held himself out as representing both PBM and Commercial Title.

3.  In the early to mid 1980s, DAVID ALAN HAWKINS, through Mad Dog, was involved in building a condominium project in the Seattle metropolitan area. The project was financed by a Savings and Loan (the "S&L").

4. A dispute arose between DAVID ALAN HAWKINS and the S&L, leading to a series of civil lawsuits in the Superior Court for King County, Washington, between DAVID ALAN HAWKINS and Mad Dog, and the S&L and related individuals and entities

5. DAVID ALAN HAWKINS and his company partially prevailed in the original civil suit against the S&L. However, Hawkins claimed he did not receive the damages to which he was entitled, due to alleged misconduct by the trial judge. DAVID ALAN HAWKINS allegations of misconduct against the trial judge were ultimately rejected by every court and administrative body to consider these claims.

6. DAVID ALAN HAWKINS then pursued a number of other civil lawsuits and appeals in Washington State and Federal court related to the original dispute with the S&L. Again, DAVID ALAN HAWKINS claimed he did not receive what he was entitled to due to alleged misconduct by other trial and appellate judges, lawyers, and various other people.

7. In the early to mid 1990s, DAVID ALAN HAWKINS then began filing non-consensual liens against real property owned by the various judges, lawyers, prosecutors, and bank executives, who DAVID ALAN HAWKINS alleged had conspired to wrongfully frustrate his various civil lawsuits related to the dispute with the S&L. On or about May 5, 1994, DAVID ALAN HAWKINS, in his own name and on behalf of his company Mad Dog filed a number of liens, captioned as an "Affidavit of Obligation" against real property belonging to sixteen different individuals, including judges, lawyers, prosecutors, and S&L executives. Among the individuals and properties identified in the lien was a residence belonging to a Washington State Court of Appeals judge, R.P. and her husband, located on Cascadia Avenue South in Seattle, Washington. Also among the individuals and properties identified in the lien was another residence belonging to a former S&L executive, T.C., located on S.E. 82nd Street, Mercer Island, Washington.

8. The liens filed by DAVID ALAN HAWKINS were invalid, and did not create any legal interest in any of the real property purportedly covered by the liens.

9. On or about October 4, 1994, DAVID ALAN HAWKINS assigned his interest and his company's interest in the fraudulent liens to another company he controlled, PBM.

10. In the latter part of 1994, DAVID ALAN HAWKINS, acting through his various companies, purported to start a "foreclosure" action against some of the properties that were the subject of the fraudulent liens.

11. On or about November 1, 1994, under Cause No. 94-2-26608-0, the Superior Court for King County, Washington entered an "Order Striking Liens and Enjoining Foreclosure" (hereafter, the "Order") that covered the liens filed by DAVID ALAN HAWKINS and Mad Dog Builders, Inc., and subsequently assigned to PBM. In the Order, the Court found that the Liens were "frivolous and filed with malicious intent, for the sole purpose of harassing and extracting revenge" against the people who owned the various parcels of real property. The Order confirmed that the liens "have no basis in law or fact." The Order struck the liens, and permanently enjoined DAVID ALAN HAWKINS from attempting to foreclose on or otherwise attempting to sell the real properties. T.C.'s property on S.E. 82nd Street, Mercer Island, Washington was among the properties specifically mentioned in the Order.

12. Similar orders were entered by the King County Superior Court as to numerous other properties covered by the liens, including R.P.'s property on Cascadia Avenue South in Seattle, Washington.

13. DAVID ALAN HAWKINS continued to make efforts to convert the invalid liens into an asset he could sell, mortgage, or otherwise use to make money. These efforts included various attempted conveyances of the invalid liens to and from other entities. DAVID ALAN HAWKINS efforts culminated in the scheme alleged herein.

**B. THE OFFENSE.**

14. Beginning at a date uncertain, but within the last five years, and continuing through on or about May 1, 2006, at Fall City, within the Western District of Washington and elsewhere, DAVID ALAN HAWKINS and HARRY SKEINS, JR. and others known and unknown, did knowingly and willfully conspire, confederate and agree to commit wire fraud, that is, to knowingly execute, and attempt to execute, a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, by means of wire communications in interstate commerce, in violation of Title 18, United States Code, Sections 1343 and 2.

**C. THE OBJECT OF THE CONSPIRACY.**

15. The object of the conspiracy was for DAVID ALAN HAWKINS, HARRY SKEINS, JR. and other co-conspirators to defraud mortgage companies and other financial institutions, by fraudulently purporting to sell properties they did not own to B.D., a "straw buyer" recruited by the conspirators. DAVID ALAN HAWKINS and HARRY SKEINS, JR. and the other conspirators caused B.D. to apply for loans to finance the fraudulent transactions, the proceeds of which were ultimately disbursed to DAVID ALAN HAWKINS, HARRY SKEINS JR., and other members of the conspiracy.

**D. THE MANNER AND MEANS OF THE CONSPIRACY.**

16. It was part of the conspiracy that DAVID ALAN HAWKINS, HARRY SKEINS, JR., and others known and unknown, purported to start a title insurance company named Commercial Title. Title insurance companies issue policies that (a) confirm and insure that title to a particular piece of real property is as described in the policy, and (b) promise to pay damages, with certain exclusions, if title to the property is somehow impaired. In reality, Commercial Title was not legally authorized to issue title insurance policies in Washington State, and had no assets with which to pay damages.

17. It was further part of the conspiracy that on or about March 15, 2006, DAVID ALAN HAWKINS, acting as President of PBM, entered into an agreement to sell R.P.'s property located on Cascadia Avenue South in Seattle, Washington, to B.D. B.D. was a straw buyer recruited by DAVID ALAN HAWKINS and others to act as the buyer, and was paid a fee for his participation. Neither DAVID ALAN HAWKINS nor PBM had any interest in R.P.'s property, nor did they have R.P.'s authority to sell the property.

18. It was further part of the conspiracy that on or about that same date, DAVID ALAN HAWKINS, acting as President of PBM, entered into a separate agreement to sell T.C.'s property, located on S.E. 82nd Street, Mercer Island, Washington, to B.D. Again, B.D. was a straw buyer recruited by DAVID ALAN HAWKINS and others to act as the buyer, and was paid a fee for his participation. Again, neither DAVID ALAN HAWKINS nor PBM had any interest in T.C.'s property, nor did they have T.C.'s authority to sell the property.

19. It further was part of the conspiracy that DAVID ALAN HAWKINS and HARRY SKEINS, JR., acting with others known and unknown, then caused B.D. to apply for mortgage loans to finance these fictitious transactions. Both loans were obtained through a mortgage broker, R.H., from Soluna First Wholesale Mortgage Corp. (Soluna First), which is based in Atlanta, Georgia.

20. It was further part of the conspiracy that as part of the loan process, and to induce Soluna First to make the loans, DAVID ALAN HAWKINS, and HARRY SKEINS, JR., and others known and unknown, issued fraudulent "A.L.T.A. Commitment Policies" under Commercial Title's name for the properties. DAVID ALAN HAWKINS and HARRY SKEINS, JR. issued these policies knowing that the policies contained materially false statements; that Commercial Title had no legal authority to issue said policies; and that Soluna First would rely on the policies. Specifically:

a. On or about March 29, 2006, HARRY SKEINS JR., acting as "Title Examiner," signed an "A.L.T.A. Commitment Policies" on Commercial Title letterhead, falsely certifying that PBM was the title holder and owner of R.P.'s property on Cascadia Avenue South in Seattle, Washington, as of that date. In reality, as DAVID ALAN HAWKINS and HARRY SKEINS JR., well knew, PBM had no valid property interest in the property, and no authority to convey any interest in the property.

b. On or about that same date, HARRY SKEINS JR., acting as "Title Examiner," signed an "A.L.T.A. Commitment Policies" on Commercial Title letterhead, falsely certifying that PBM was the title holder and owner of T.C.'s property on S.E. 82nd Street, Mercer Island, Washington, as of that date. In reality, as DAVID ALAN HAWKINS and HARRY SKEINS JR., well knew, PBM had no valid property interest in the property, and no authority to convey any interest in the property.

21. On or about April 4, 2006, DAVID ALAN HAWKINS and HARRY SKEINS, JR., caused PBM and Smith Brown & Sterling, P.S., a law firm and escrow company located in Falls City, Washington, to file warranty deeds fraudulently purporting to pass title to both R.P. and T.C.'s properties to B.D.

22. Also on or about April 4, 2006, Tier One Bank of Lincoln, Nebraska, funded the two loans through Soluna First. The mortgage loan for R.P.'s property was in the amount of $747,500. The mortgage loan for T.C.'s property was in the approximate amount of $812,500. The loan funds were wired by Tier One Bank to the Key Bank IOLTA trust account of Smith, Brown & Sterling. Smith, Brown & Sterling, in turn, disbursed the funds to an account belonging to HARRY SKEINS, JR., from which it was disbursed to DAVID ALAN HAWKINS and other members of the conspiracy.

///

///

E. **OVERT ACT OF THE CONSPIRACY.**

In furtherance of the conspiracy, and to accomplish one or more of its objects, the following overt acts were committed by one or more of the conspirators within the Western District of Washington:

23. On or about April 4, 2006, defendants DAVID ALAN HAWKINS and HARRY SKEINS JR., caused Smith, Brown & Sterling, P.S. to prepare and file deeds purporting to pass title in R.P. and T.C.'s properties to B.D.

All in violation of Title 18, United States Code, Sections 1349 and 2.

## COUNT TWO AND THREE
### (Wire Fraud)

A. **INTRODUCTION AND BACKGROUND.**

24. Paragraphs 1 - 13 are incorporated by this reference as if set forth fully herein.

B. **THE OFFENSE.**

25. Beginning on a date uncertain, but within the last five years, and continuing through on or about May 1, 2006, within the Western District of Washington and elsewhere, DAVID ALAN HAWKINS and HARRY SKEINS, JR., devised and executed a scheme and artifice to defraud for the purpose of obtaining money and property by means of false and fraudulent pretenses, representations and promises ("the scheme and artifice to defraud"), knowing full well that the pretenses, representations and promises were false.

26. The essence of the scheme and artifice to defraud was for DAVID ALAN HAWKINS, and HARRY SKEINS, JR. to defraud mortgage companies and other financial institutions, by fraudulently purporting to sell properties they did not own to B.D., a "straw buyer" recruited by the conspirators. DAVID ALAN HAWKINS and HARRY SKEINS, JR. caused B.D. to apply for loans to finance the fraudulent transactions, the proceeds of which were ultimately disbursed to DAVID ALAN HAWKINS, HARRY SKEINS JR., and others.

C. **THE SCHEME AND ARTIFICE TO DEFRAUD.**

27. It was part of the scheme and artifice to defraud that DAVID ALAN HAWKINS and HARRY SKEINS, JR., committed the acts alleged in paragraphs 16 - 22, which are incorporated by this reference as if set forth fully herein.

D. **EXECUTION OF THE SCHEME AND ARTIFICE TO DEFRAUD.**

28. **Count Two:** On or about April 5, 2006, within the Western District of Washington and elsewhere, DAVID ALAN HAWKINS and HARRY SKEINS JR., together with others both known and unknown, for the purpose of executing the scheme and artifice to defraud and attempting to do so, did knowingly and willfully transmit and cause to be sent and transmitted, by wire communication in interstate and foreign commerce, a bank wire of $734,073.19 from the IOLTA trust account of Smith, Brown and Sterling, P.S., located in Fall City, Washington, via Key Bank's wire room in Brooklyn, Ohio, to a Bank of America account belonging to HARRY SKEINS JR., in the State of Texas.

All in violation of Title 18, United States Code, Sections 1343 and 2.

29. **Count Three:** On or about April 5, 2006, within the Western District of Washington and elsewhere, DAVID ALAN HAWKINS and HARRY SKEINS JR., together with others both known and unknown, for the purpose of executing the scheme and artifice to defraud and attempting to do so, did knowingly and willfully transmit and cause to be sent and transmitted, by wire communication in interstate and foreign commerce, a bank wire of $611,487.44 from the IOLTA trust account of Smith, Brown and Sterling, P.S., located in Fall City, Washington, via Key Bank's wire room in Brooklyn, Ohio, to a Bank of America account belonging to HARRY SKEINS JR., in the State of Texas.

All in violation of Title 18, United States Code, Sections 1343 and 2.

///
///
///

## ALLEGATION OF FORFEITURE

The allegations in Counts through Three of the Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of one or more of the offenses charged in Counts One through Three above, Defendants DAVID ALAN HAWKINS and HARRY SKEINS JR., shall forfeit to the United States any and all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1343 (wire fraud), an offense constituting "specified unlawful activity," as defined in Title 18, United States Code, Section 1956(c)(7), or which constitutes or is derived from proceeds traceable to a conspiracy to commit wire fraud, including but not limited to the following:

A. <u>Money Judgment</u>:

A sum of money equal to approximately One Million, Five Hundred and Sixty Thousand dollars ($1,560,000) in United States funds, representing the amount of the proceeds obtained as a result of the offense charged in Counts One through Three of this Indictment, conspiracy to commit wire fraud and wire fraud, for which the defendants are jointly and severally liable.

B. <u>Currency</u>

United States currency and other monetary instruments constituting proceeds obtained as a result of the offense charged in Counts One through Three of this Indictment, including but not limited to the following amounts:

1. Approximately Fifty Thousand dollars ($50,000) in United States funds, on deposit with the law firm of Bullivant, Houser, Bailey, P.C. for the account of David S. Hawkins.

1      2.     One $20,000 cashier's check presently in the custody and control of Roger Hall.

3. One $10,000 Wells Fargo Cashier's Check, seized from the home of David Alan Hawkins on or about May 1, 2006.

4. One $5,000 cashier's check, payable to Emily Bass.

5. Approximately $15,000 in U.S. funds, on deposit in the trust account of Emily Bass.

6. Approximately $356,080, on deposit with Trust Mark Escrow.

7. Approximately $70,000 in a Bank of America account in the name of defendant HARRY SKEINS, JR.

8. Approximately The $3200 is in the Wells Fargo account of The Commercial Title Insurance and Escrow Co. Inc., under the control of DAVID ALAN HAWKINS.

C. <u>Substitute Assets</u>.

If any of the above-described forfeitable property, as a result of any act or omission of the Defendants --

1. cannot be located upon the exercise of due diligence;

2. has been transferred or sold to, or deposited with, a third party;

3. has been placed beyond the jurisdiction of the Court;

4. has been substantially diminished in value; or

5. has been commingled with other property which cannot be subdivided without difficulty;

///
///
///
///
///
///

1  it is the intent of the United States, pursuant to Title 21, United States Code,
2  Section 853(p), to seek the forfeiture of any other property of the Defendants up to the
3  value of the above-described forfeitable property.

A TRUE BILL:

DATED: August 16, 2006

*Signature of Foreperson Redacted*
*Per Policy of Judicial Conference*

FOREPERSON

_____
JOHN McKAY
United States Attorney

_____
LAWRENCE LINCOLN
Assistant United States Attorney

_____
VINCENT T. LOMBARDI
Assistant United States Attorney